UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DONNA KACHNOWSKI,

       Plaintiff,

       vs.                                No. 3:14cv567(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

       Defendant.

_____X

## <u>RECOMMENDED RULING ON PENDING MOTIONS</u>

Plaintiff Donna Kachnowski has filed this appeal of the adverse decision of the Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits.  Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing the Commissioner's decision.  [Doc. # 10].  Defendant has responded with a motion to affirm the decision of the Commissioner.  [Doc. # 14].  For the reasons set forth below, the Court recommends that the decision of the Commissioner should be reversed and the matter remanded for further proceedings consistent with this Ruling.

## <u>Procedural History</u>

On December 15, 2010, Plaintiff filed an application for disability insurance benefits, alleging an onset date of December 3, 2008.  Her claim was denied initially and upon reconsideration.  Plaintiff then filed a request for hearing; a hearing was held before Administrative Law Judge Kim Griswold (the "ALJ") on September 5, 2012.  The ALJ issued a decision on September 28, 2012 concluding that Plaintiff had not been disabled from December

3, 2008 through the date of the ALJ's decision.  Plaintiff appealed the ALJ's decision to the Appeals Council.  In a decision dated April 10, 2014, the Appeals Council denied the appeal and upheld the ALJ's decision, making the ALJ's decision final for appeals purposes.  This appeal ensued.

## Factual Background

Plaintiff was fifty-two years old at the time the ALJ issued her decision.  (R. 246).  She has earned a college degree in business management.  (R. 246).  Plaintiff has past work experience as an executive secretary and as an accountant/management analyst.  (R. 31). Plaintiff's most recent period of employment was from February 2, 2011 until January 2012.[1] (R. 22).  Plaintiff was let go from this position because of the frequency with which she missed work to attend medical appointments.  (R. 52).

## Medical History

Plaintiff has a history of irritable bowel syndrome ("IBS").  Her history of this condition dates back to November, 2002, when Plaintiff complained of epigastic pain and abdominal cramping.  (R. 280).  Plaintiff was diagnosed with IBS in 2003.  (R. 280).  Medical records note that the condition was well-managed with medication at that time.  (*Id.*).  Plaintiff reported an episode of rectal bleeding on August 10, 2007.  (R. 396).  Plaintiff saw Dr. Shapiro a year later, reporting alternating constipation and diarrhea.  (R. 282).  Dr. Shapiro noted possible IBS with rectal bleeding from internal hemorrhoids, and advised that Plaintiff should continue taking her current medications.  (*Id.*).  On December 1, 2011, Dr. Shapiro noted that Plaintiff's IBS continued and that her diarrhea and constipation, as well as her discomfort due to gas and

---

[1] The ALJ found that Plaintiff worked at substantial gainful activity during this period of time.  (R. 22).  Since Plaintiff has been out of work since January 2012, she was unable to perform substantial gainful activity for a continuous period of at least 12 months as required by the Social Security Act.  *See* 42 U.S.C.A. § 423.

bloating, had increased.  (R. 377).  He advised her to continue taking probiotics, Metamucil, and Miralax as needed.  (R. 379).  Colonic biopsies from April 30, 2012 showed no diagnostic abnormalities.  (R. 382).

Plaintiff began to see Dr. McCrary, a rheumatologist, in 2006.  Her chief complaints were arthralgias[2] and myalgias[3].  (R. 390).  Plaintiff also complained of sudden onset pain in her right shoulder.  (*Id.*).  On April 23, 2007, Dr. McCrary diagnosed a frozen right shoulder, chronic fatigue syndrome, fibromyalgia syndrome, and carpal tunnel syndrome.  (R. 394).  Plaintiff was advised to continue physical therapy for her frozen shoulder and to begin medication for her chronic fatigue syndrome.  (*Id.*).  At another follow up visit on August 10, 2007, Dr. McCrary observed that the pain in Plaintiff's right shoulder continued but was improving.  (R. 396).  With respect to Plaintiff's chronic fatigue syndrome, Dr. McCrary noted that Plaintiff's fatigue remained significant and that working from home at times is reasonable and appropriate.  (R. 399).  On February 18, 2008, Dr. McCrary noted possible psoriatic arthritis.  (R. 409).

Medical evidence also shows a history of psoriasis.  On June 19, 2007, Plaintiff went to her primary care physician with recurrent blisters/rash on her left palm.  (R. 303).  She was referred to a dermatologist.  (*Id.*).  The dermatologists diagnosed psoriasis and observed scaly plaque on Plaintiff's left palm.  (R. 444).  On August 10, 2007, Dr. McCreary observed psoriasis on Plaintiff's palms and scalp, and suggested a trial of Methotrexate[4].  (R. 396, 399).  On November 21, 2007, Dr. McCreary noted that the rash on Plaintiff's palms was improving.  (R. 400).  Plaintiff experienced a flare up of psoriasis on her left palm in January, 2008.  (R. 283).

---

[2] Arthralgia is defined as pain in one or more joints.  *See* http://www.merriam-webster.com/dictionary/arthralgia.

[3] Myalgia is defined as pain in one or more muscles.  *See* http://www.merriam-webster.com/dictionary/myalgia.

[4] Methotrexate is a medication for treatment of severe psoriasis.  *See* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682019.html#why.

On July 9, 2008, the dermatologist noted that Plaintiff's palms and left foot had erythema and plaque.  (R. 284).  Psoriasis on Plaintiff's hands and scalp was also present on December 2, 2011.  (R. 419).

Medical records additionally evidence Plaintiff's history of mental impairments.  Dr. Bluth, a neurological consultant, saw Plaintiff for her complaints of memory loss.  (R. 288).  On September 15, 2008, he noted an overall normal neurological exam.  (*Id.*).  Dr. Bluth ordered a cranial MRI and advised that psychological counseling and formal neuropsychological testing may be beneficial.  (*Id.*).  An MRI of the brain from September 19, 2008 was normal.  (R. 285).

Finally, on January 10, 2012, Plaintiff saw Dr. Firshein for a complete physical exam. He noted that Plaintiff's primary health issues were with her fibromyalgia and psoriasis, currently well-controlled.  (R. 426).

### Additional Evidence before the ALJ

Dr. Jolda conducted a consultative exam of Plaintiff on January 17, 2011.  He noted that Plaintiff's psoriasis had lasted for about two years but that it cleared up over the summer when Plaintiff was out in the sun.  (R. 333).  He observed that Plaintiff's fibromyalgia began in 2006 and was first diagnosed in 2007.  (*Id.*).  This condition causes Plaintiff to have pain in her whole body.  (*Id.*).  Dr. Jolda noted that Plaintiff was diagnosed with IBS as a result of her chronic constipation.  (*Id.*).  Plaintiff reported that she had not taken any medication in a year and a half because she no longer had medical insurance to cover the expense.  (*Id.*).  Dr. Jolda found no psoriatic lesions.  (R. 334).  He recorded normal abdomen and bowel sounds.  (R. 335).  Dr. Jolda's overall impression was that Plaintiff has anxiety issues, IBS, and fibromyalgia.  (R. 336). He ordered no additional tests.  (*Id.*).

Plaintiff had a consultative psychological examination with Dr. Zita on February 14, 2011.  Dr. Zita found that Plaintiff minimizes difficulties and presents herself in an unrealistically positive light.  (R. 374).  He noted good support for the presence of an underlying depression.  (*Id.*).  He further observed that Plaintiff experiences distresses somatically rather than psychologically.  (*Id.*).  Finally, Dr. Zita noted that Plaintiff's problems with forgetfulness and attention may be attributable to underlying depression.  (R. 375).

Plaintiff completed an Activities of Daily Living questionnaire on November 14, 2011. She reported that her impairments result in it taking longer for her to get dressed and groom herself, and make it difficult for her to handle zippers and buttons while dressing.  (R. 211).  She further noted that it hurts to hold a razor and that she drops soap.  (*Id.*).  Plaintiff reported that she sometimes has no bowel movement for a couple of weeks.  (*Id.*).  She needs reminders to take care of grooming and to take her medications.  (*Id.*).  Plaintiff wrote that she can prepare her own meals, and that she eats small meals to avoid discomfort.  (R. 212).  She does laundry, cleaning, and mowing.  (R. 213).  Plaintiff drives, and she does shopping in stores.  (R. 213-214). Plaintiff reported that her hobbies include watching television and movies, reading, sewing and crafts, and playing with her grandchildren.  (R. 214).  She tries not to attend social activities regularly because she is never sure how she will feel.  (R. 215).  She added that she needs to be near a bathroom "a lot" and this can be embarrassing.  (*Id.*).  Plaintiff reported daily abdominal discomfort and pain, and added that chronic diarrhea can be embarrassing and emotionally distressing.  (R. 217).

Finally, on July 24, 2012, Dr. Aiudi completed a treating physician data sheet relating to Plaintiff's psoriasis.  Dr. Aiudi noted that Plaintiff's psoriasis on both hands results in functional losses in grip, writing, and contact with others.  (R. 511-512).  She further observed that the

psoriasis on both of Plaintiff's feet results in the functional loss of occasional pain while walking.  (R. 512-513).

### The ALJ's Decision

The ALJ applied the established five-step, sequential evaluation test for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  Step one determines whether the claimant is engaged in "substantial gainful activity."  If she is, disability benefits are denied.  20 C.F.R. § 404.1520(b).  Here, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the periods of December 3, 2008 through February 1, 2011 and January 2012 through the date of the hearing.  (R. 22-23).

At step two, the ALJ evaluates whether the claimant has a medically severe impairment or combination of impairments.  In this case, the ALJ determined that Plaintiff has the following severe impairments: psoriasis versus possible psoriatic arthritis; irritable bowel syndrome; depression; personality disorder (with avoidant and dependent traits and somatization); chronic fatigue syndrome (2007); and myalgias and/or fibromyalgia.  (R. 23-24).

At the third step, the ALJ evaluates the claimant's impairments against the list of those impairments that the Social Security Administration acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(d), 20 C.F.R. Part 404, Subpart P, App. 1 (2010) (hereinafter "the Listings").  If the impairments meet or medically equal one of the Listings, the claimant is conclusively presumed to be disabled.  In this case, the ALJ considered Plaintiff's physical and mental impairments, alone and in combination, and concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  (R. 24-26).

At step four, the ALJ must first assess the claimant's residual functional capacity ("RFC") and then determine whether the claimant can perform her past relevant work. 20 C.F.R. § 404.1520(f). Here, after considering the record as a whole and evaluating Plaintiff's credibility and subjective complaints of pain and other symptoms, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except she cannot perform overhead reaching bilaterally. She can tolerate occasional exposure to extreme heat, humidity, dust, fumes, odors, gases, and poor ventilation. She must have bathroom access within 5-10 minutes of perceived need to use the bathroom. She can understand, remember, and carry out simple instructions throughout an ordinary workday and workweek with normal breaks on a sustained basis. (R. 26). The ALJ then determined that Plaintiff was unable to perform her past relevant work. (R. 31).

Finally, at step five, the ALJ must determine, considering the claimant's age, education, work experience, and residual functional capacity, whether there are jobs existing in significant numbers in the national economy claimant can perform. 20 C.F.R. § 404.1569. In this case, the ALJ heard testimony from a vocational expert and concluded that the jobs of clerical worker, account clerk, and order clerk are available. (R. 32). As such, the ALJ determined that Plaintiff was not under a disability through the date of the decision. (*Id.*).

### **Standard of Review**

Under 42 U.S.C. § 405(g), the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Judicial review of the Commissioner's decision is limited. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). It is not the Court's function to determine *de novo* whether the claimant was disabled. *Schaal v. Apfel*,

134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court must review the record to determine first whether the correct legal standard was applied and then whether the record contains substantial evidence to support the decision of the Commissioner. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."); *see also Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).

When determining whether the Commissioner's decision is supported by substantial evidence, the Court must consider the entire record, examining the evidence from both sides. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Substantial evidence need not compel the Commissioner's decision; rather substantial evidence need only be that evidence that "a reasonable mind might accept as adequate to support [the] conclusion" being challenged. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

## Discussion

Dispositive of this appeal is the Court's determination that the ALJ's step five finding is not supported by substantial evidence. The ALJ's RFC includes the restriction that Plaintiff "must have bathroom access within 5-10 minutes of perceived need to use the bathroom." At step five, the ALJ relied on the testimony of a vocational expert ("VE") to support her determination that there were jobs Plaintiff could perform given that RFC. The ALJ did not,

however, present the above restriction to the VE, and there is no other evidence to support the step five finding.  As such, the matter should be remanded to the Commissioner.

At the hearing, the ALJ presented two hypothetical questions to the VE relating to access to the bathroom.  First, the ALJ asked whether there were jobs available for an individual who was the same age as Plaintiff, and had the same educational background and work experience, who had the limitation of (among other limitations) needing to be "within about five to ten minutes of a restroom, so when they need to use the restroom they must have access within about five to ten minutes in the work facility."  (R. 81-82).  The VE asked for clarification on this point: in response to the VE's question of *how often* restroom breaks would be needed, the ALJ responded as follows: "During lunch break and during the rest periods she can go to the ladies room…not in excess, not in this particular hypothetical, no."  (R. 82).  The VE testified that the hypothetical individual could perform the jobs of clerical worker, account clerk, and order clerk. (*Id.* at 82-83).

In the next hypothetical, the ALJ changed the limitation relating to restroom access.  She asked whether the same jobs would be available if the individual "needed one extra break a day to use the restroom and the break would last 10 to 15 minutes…"  (R. 83).  The VE responded that the jobs would be available to this hypothetical individual as well.  (*Id.*).

Plaintiff argues that there is nothing in these hypotheticals which address the restriction in the ALJ's RFC finding.  Plaintiff contends, and the Court agrees, that the need to be within a close proximity to a restroom, and the need for one extra, unscheduled bathroom break is not the same as the need for access to the restroom "within 5-10 minutes of perceived need," any time the need arises.  There is nothing in the hypotheticals addressing the *frequency* with which

Plaintiff may need to use the restroom, and no basis to determine what the VE may have answered had he been asked about that.

The Commissioner unsuccessfully attempts to negate Plaintiff's argument by positing that the ALJ's restroom limitation is consistent with the RFC that Plaintiff could perform a job with "normal breaks."  The Commissioner, in essence, argues that the ALJ's assessed limitation focuses on the ease with which Plaintiff can assess the bathroom during her scheduled breaks. The obvious problem with this argument is twofold:  First, the "normal breaks" language occurs in a completely separate sentence of the ALJ's RFC determination, one addressing Plaintiff's ability to "understand, remember, and carry out simple instructions throughout an ordinary workday and workweek."  By no stretch of the rules of English grammar would the phrase "normal breaks" work to modify the preceding sentence pertaining to restroom access.  Second, the ALJ's assessed limitation does not, on its face, pertain to ease of access to the restroom; the limitation requires Plaintiff to have bathroom access "within 5-10 minutes of perceived need," which the Court reads as clearly pertaining to frequency.

The Commissioner also argues that the record does not support a finding that Plaintiff's IBS caused significant limitations.  This argument is *nihil ad rem* at step five, though, because the ALJ had already made the determination that such a limitation was necessary when she made her RFC assessment at step four.

It is the Commissioner's burden, at step five, to show that significant numbers of jobs exist in the national economy that the claimant is able to perform.  *See* 20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the ALJ may depend on testimony from a vocational expert regarding a hypothetical "as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion, and [the

hypotheticals] accurately reflect the limitations and capabilities of the claimant involved."
*McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (internal quotations marks and citations
omitted).  If the hypothetical questions posed to the VE do not accurately reflect plaintiff's
impairments, it is legal error for the ALJ to rely on the VE's answer to that hypothetical.  *See
McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 405-06 (W.D.N.Y. 2008).  *See also Beckers v.
Colvin*, 38 F.Supp.3d 362, 378 (W.D.N.Y. 2014) ("Where the hypothetical questions presented
to a VE do not represent the full extent of Plaintiff's disabilities, an ALJ's determination of no
disability based on that VE's testimony cannot be supported by substantial evidence, and remand
is appropriate.").

Here, the ALJ posed several hypotheticals to the VE, but then made an RFC
determination which resulted in a limitation vastly different from the limitations contemplated in
the hypotheticals to which the VE responded.  Accordingly, the Commissioner has not met her
burden of showing that jobs exist in significant numbers in the national economy that an
individual with the RFC assigned to Plaintiff can perform.

This matter must be remanded for further proceedings consistent with this Ruling.
Specifically, the ALJ must ensure that substantial evidence supports the step five finding.
Further, the ALJ should, in her new decision, address the other issues Plaintiff raises in this
appeal in order to obviate the need for repeated judicial review.

## Conclusion

For the reasons discussed above, the Court recommends that Plaintiff's motion to reverse
the decision of the Commissioner and/or remand [Doc. # 10] be GRANTED, and Defendant's
motion to affirm the decision of the Commissioner [Doc. # 14] be DENIED.  This matter should
be remanded to the ALJ for further proceedings in accordance with this opinion.

This is a Recommended Ruling.  *See* Fed. R. Civ. P. 72(b)(1).  Any objection to this Recommended Ruling must be filed within 14 days after service.  *See* Fed. R. Civ. P. 72(b)(2). In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to transfer this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part.  *See* Fed. R. Civ. P. 72(b)(3) and D. Conn. Local  Rule 72.1(C)(1) for Magistrate Judges.

The Clerk's Office is further instructed that, if any party appeals to this Court the decision made after remand, any subsequent Social Security appeal is to be assigned to the Magistrate Judge who issued the Recommended Ruling in this case, and then to the District Judge who issued the Ruling that remanded the case.

SO ORDERED, this ___24th___ day of April, 2015, at Bridgeport, Connecticut.

_____*/s/ William I. Garfinkel*_____
WILLIAM I. GARFINKEL
United States Magistrate Judge